UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20262-BLOOM/Elfenbein

**UNITED STATES OF AMERICA**,

v.

**MARIA G. BOU**,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON MOTION FOR
COMPASSIONATE RELEASE, MOTION FOR SENTENCE
RECONSIDERATION, AND MOTION FOR APPOINTMENT OF COUNSEL**

**THIS CAUSE** is before the Court on *pro se* Defendant, Maria G. Bou's ("Bou") Motion for Compassionate Release, Motion for Sentence Reconsideration, which the undersigned construes as a request for a sentence reduction, and Motion for Appointment of Counsel (the "Motion"), ECF No. [211].  The Honorable Beth Bloom referred the Motion to me for a Report and Recommendation.  *See* ECF No. [216].  For the reasons explained below, I respectfully **RECOMMEND** that the Motion, **ECF No. [211]**, be **DENIED**.

**I.     BACKGROUND**

This case involved charges of conspiracy to commit healthcare fraud and wire fraud as well as substantive counts of healthcare fraud.  Specifically, Bou and her co-conspirators paid kickbacks to beneficiaries with insurance plans that Blue Cross Blue Shield ("BCBS"), an insurance company, managed in exchange for allowing Elite Therapy Group, Inc. ("Elite") and Celestial Therapy Group, Inc. ("Celestial Therapy") to bill for medical benefits, items, and services that were not medically necessary, not eligible for reimbursement, and not received by the beneficiaries.  *See* ECF No. [84].  She also "offered beneficiaries referral fees to bring

additional beneficiaries and instructed beneficiaries to sign blank physical therapy forms," and she "communicated with the medical billing service, which submitted the billing for Elite." *Id.*

Bou was also the owner of Celestial Therapy where she managed the administrative and day-to-day tasks. *Id.* Through Celestial Therapy, Bou "knowingly and willfully submitted and caused the submission of more than $550,000 but not more than $1,500,000 in false and fraudulent [] claims for reimbursement," and in doing so, she "represented that various health care benefits, items, and services were medically necessary, prescribed by a doctor, and had been provided by Elite to insurance beneficiaries." *Id.* In particular, BCBS paid Celestial at least $474,199 as a result of such false and fraudulent claims, and Bou personally obtained $238,078 as a result of the illegal activity at Celestial Therapy. *Id.*

A grand jury in the Southern District of Florida returned an Indictment, charging Bou and other conspirators with conspiracy to commit healthcare fraud and wire fraud, in violation of 18 U.S.C. § 1349 (Counts 1 and 14); and health care fraud, in violation of 18 U.S.C. § 1347 (Counts 2-13 and 15-18). *See* ECF No. [3]. Following her arrest, Bou pled guilty to Count 14 of the Indictment. *See* ECF No. [83]. In the Plea Agreement, Bou agreed to make certain joint sentencing recommendations to the District Court, which included the following: (1) pursuant to Sentencing Guideline § 2B1.1(a)(1), the appropriate base offense level was seven; (2) pursuant to Sentencing Guideline § 2B1.1(b)(1)(i), the relevant intended amount of loss resulting from Bou's participation in the offense was more than $550,000 but not more than $1,500,000 resulting in a 14-level enhancement; and (3) pursuant to Sentencing Guideline § 3B1.1, a two-level aggravating role enhancement applied. *Id.*

Following the entry of her guilty plea, the U.S. Probation Office prepared a Pre-Sentence Investigation Report ("PSI"). According to the PSI, Bou's base offense level was a seven, and

she received a 14-level enhancement for the intended loss amount, a two-level enhancement for using sophisticated means, and a two-level adjustment for her role in the offense, for an adjusted offense level of 25. *See* ECF No. [127] at ¶¶65-71. After a three-level reduction for acceptance of responsibility, her total offense level was 22. *Id.* at ¶¶73-75. As it relates to the role enhancement, the PSI explained that Bou and two other co-conspirators "were the organizers or leaders of this criminal activity that involved five or more participants, [so] a four-level aggravating role adjustment under § 3B1.1(a) [wa]s recommended; however, pursuant to the parties' agreement, only a two-level aggravating role adjustment under § 3B1.1(c) was recommended for Bou." *Id.* at ¶56. As for criminal history, Bou had no criminal history points, so her criminal history category was a I, making her advisory guideline range 41 to 51 months' imprisonment. *Id.* at ¶125.

At sentencing, on February 24, 2023, the Court sentenced Bou to 36 months' imprisonment, a sentence slightly below the advisory guideline range. *See* ECF No. [155]. Following the Government's filing of its Motion for Sentence Reduction under Federal Rule of Criminal Procedure 35, *see* ECF No. [193], the Court held a hearing in which it reduced Bou's sentence by 50% in recognition of her substantial assistance to the Government, *see* ECF Nos. [205] and [206]. The Amended Judgment, entered on April 16, 2024, reflects an amended sentence of 18 months' imprisonment on Count 14. *See* ECF No. [207]. According to Bou, she self-surrendered to the Bureau of Prisons ("BOP") on March 1, 2024, and she is currently serving her sentence at Aliceville Federal Correctional Institution ("Aliceville FCI"). *See* ECF No. [211] at 3. And although her Motion states that her projected release date is June 10, 2025, the Inmate Locator on the website for BOP indicates that her projected release date is March 12, 2025. *See* https://www.bop.gov/inmateloc/ (last visited Jan. 30, 2025).

Approximately three months after her self-surrender date, Bou submitted an Inmate Request for Staff, asking the warden of Aliceville FCI to grant her compassionate release on various grounds. *See* ECF No. [211] at 26. According to the Motion, the warden did not respond to the request within 30 days, so Plaintiff exhausted her administrative remedies and thereafter filed the Motion in which she seeks the following relief: (1) a retroactive sentence reduction under § 4C1.1(a) of the United States Sentencing Guidelines ("Amendment 821") consisting of a two-level reduction of her offense level as a zero-point offender; (2) compassionate release citing to (a) her role as sole caregiver of her adult son and young daughter, (b) her health issues since her incarceration, (c) her deportable status, and (d) the conditions at Aliceville FCI as extraordinary and compelling conditions that would support an early release; and (3) the appointment of counsel. *See generally* ECF No. [211].

In its Response, the Government opposes a two-level sentence reduction for zero-point offenders under Amendment 821 because Bou received a two-level adjustment as a manager of the conspiracy, which, according to the Government, makes her ineligible for the reduction. *See* ECF No. [213] at 2-5. As for the request for compassionate release, the Government argues that she does not satisfy the criteria set forth in the policy statement contained within the Sentencing Guidelines and that many of the facts Bou cites in support of an early release were already known to the District Court at the time of sentencing. *Id.* at 6-7. In her Reply, Bou reiterates the arguments from her Motion. *See generally* ECF No. [215]. With the Motion fully briefed, it is now ripe for review.

## II. LEGAL STANDARDS

### a. Sentence Reductions Under Amendment 821

Courts are generally forbidden from modifying a sentence after it becomes final. *United States v. Bryant*, 996 F.3d 1243, 1251 (11th Cir. 2021). However, Congress has authorized three narrow sentence-modification proceedings as outlined in 18 U.S.C. § 3582(c). *Id.* (quoting *United States v. Maiello*, 805 F.3d 992, 1000 (11th Cir. 2015) (internal citations omitted)). In particular, § 3582(c)(2) allows a sentence modification "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). In such an instance, the district court may reduce the term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, provided that such a reduction is consistent with the Sentencing Commission's applicable policy statements. *Id.* Section 3582(c)(2), therefore, requires a two-step process to determine whether a final sentence should be modified when the Sentencing Commission has lowered the original sentencing range. *See Dillon v. United States*, 560 U.S. 817, 825–26 (2010). In step one, the district court must determine if a retroactive amendment to the Sentencing Guidelines indeed lowered a defendant's guideline range and whether a reduction would be consistent with the applicable policy statements. *See United States v. Barbieri*, No. 18-20060, 2023 WL 8472741, at *2 (S.D. Fla. Dec. 6, 2023). In step two, the district court must consider the factors under 18 U.S.C. § 3553(a)[1] to determine whether it will exercise its discretion to reduce the sentence. *Id.*

---

[1] The § 3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the applicable sentencing guidelines range; (5)

As it relates to step 1 of the analysis, here, the Court must determine whether the retroactive amendment to the Sentencing Guidelines at issue, Amendment 821, applies and reduces a defendant's advisory guideline range. Pursuant to Amendment 821, a defendant may be retroactively eligible for a two-level reduction in his or her offense level if the defendant meets all the following criteria:

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense);

(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role); and

---

any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

> (11) the defendant was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848[.]

See U.S.S.G. § 4C1.1.

### b. Compassionate Release

In addition, a district court may modify a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). If it finds that such reasons exist, a court must also consider the applicable factors set forth in 18 U.S.C. § 3553(a) and determine that the defendant does not pose a danger to the community, as provided under 18 U.S.C. § 3142(g), and that the reduction is "consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement is in U.S.S.G. § 1B1.13 and is binding on the courts in this Circuit. *Bryant*, 996 F.3d at 1262.

Effective November 1, 2023, the Sentencing Commission amended the applicable policy statement and expanded the list of extraordinary and compelling reasons that warrant compassionate release. U.S.S.G. § 1B1.13(b). Now, a court may find that such reasons exist if any of the following circumstances, or a combination thereof, exist:

> (1) *Medical Circumstances of the Defendant.*—
>
>> (A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (B) The defendant is—
>>
>>> (i) suffering from a serious physical or medical condition,
>>>
>>> (ii) suffering from a serious functional or cognitive impairment, or

7

>> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

. . .

> (2) *Age of the Defendant.*—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (3) *Family Circumstances of the Defendant.*—
>
>> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
>> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
>> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

. . .

> (5) *Other Reasons.*—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together

with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

. . .

U.S.S.G. § 1B1.13(b).[2]

Prior to filing a motion for compassionate release, § 3582(c)(1)(A) also requires that the defendant exhaust his or her administrative remedies. If a defendant fully exhausts all administrative rights to appeal BOP's failure to file a motion on the inmate's behalf *or* if 30 days lapse from the time the warden receives the inmate's request, whichever is earlier, a defendant satisfies the exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A).

In sum, for a court to grant a request under § 3582(c)(1)(A), it must find: (1) the defendant exhausted his or her administrative remedies, (2) extraordinary and compelling reasons exist that warrant compassionate release, (3) the defendant is not a danger to the community, and (4) the relevant factors under § 3553(a) are consistent with granting relief. *United States v. Mesa*, No. 16-CR-20715, 2023 WL 2045752, at *4 (S.D. Fla. Feb. 16, 2023). It is the defendant's burden to satisfy all the foregoing criteria. *Id.* (citing *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

### III.   DISCUSSION

#### a.   Amendment 821

In her Motion, Bou seeks a two-level reduction of her offense level as a zero-point offender under Amendment 821 and U.S.S.G. § 4C1.1. The Government opposes the reduction, arguing that Bou is ineligible because she received a two-level aggravating role adjustment as a manager of the conspiracy, which disqualifies her from relief. *See* ECF No. [213] at 2. In her

---

[2] In addition to those reasons listed above, a defendant may raise other extraordinary and compelling reasons — none of which are at issue here — such as the defendant as a victim of abuse, risk of an ongoing infectious disease outbreak or public health emergency, or an unusually long sentence. *See generally* U.S.S.G. § 1B1.13(b).

Reply, Bou claims that she is eligible for the reduction, regardless of whether she received the aggravating role adjustment, because she was not engaged in a continuing criminal enterprise and both aggravating role and engagement in a continuing criminal enterprise are required to disqualify one from receiving the two-level reduction in U.S.S.G. § 4C1.1. *See* ECF No. [215] at 2-3.

As discussed above, § 3582(c)(2) allows a sentence modification "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Thus, the Court must first determine whether U.S.S.G. § 4C1.1 lowered Bou's sentencing range, that is, whether she is eligible for the two-level zero-point offender adjustment despite receiving an aggravating role adjustment.

Instructively, the Sentencing Commission amended U.S.S.G. § 4C1.1 effective November 1, 2024 ("Amendment 831") to address the exact question raised in Bou's Motion. The Sentencing Commission explained that it made certain "technical and conforming changes" in response to the recent promulgation of U.S.S.G. § 4C1.1. *See* Amendment 831. As discussed above, "[t]he [two-level] decrease applies only if none of the exclusionary criteria set forth in subsection (a) applies." *Id.* With that said, "several stakeholders have questioned whether either condition in subsection (a)(10)" — aggravating role or engagement in a continuing criminal enterprise — "is disqualifying or whether only the combination of both conditions is disqualifying." *Id.* Explaining that it intended § 4C1.1(a)(10) "to track the safety valve criteria at 18 U.S.C. § 3553(f)(4), such that defendants are ineligible for safety valve relief if they *either* have an aggravating role *or* engaged in a continuing criminal enterprise," the Sentencing Commission stated that "[i]t is not required to demonstrate both." *Id.* (emphasis added)

10

(citing *United States v. Bazel*, 80 F.3d 1140, 1143 (6th Cir. 1996); *United States v. Draheim*, 958 F.3d 651, 660 (7th Cir. 2020)). Thus, the Sentencing Commission divided § 4C1.1(a)(10) into two separate provisions (subsections (a)(10) and (a)(11)), "[t]o clarify the Commission's intention that a defendant is ineligible for the adjustment if the defendant meets *either* of the disqualifying conditions in the provision." *Id.* (emphasis added).

Even prior to the Sentencing Commission's clarification in Amendment 831, courts in this district consistently concluded that a defendant is ineligible for a reduction under U.S.S.G. § 4C1.1 if either condition was satisfied. *See United States v. Alvarez*, No. 14-CR-80110, 2024 WL 4057422, at *3–4 (S.D. Fla. Sept. 5, 2024) ("[C]ourts in this district have uniformly, and without ambiguity, held that a defendant charged with an aggravating role is ineligible for a sentence reduction under § 4C1.1(a)(10)."); *United States v. Carlos Rafael Castaneda Mendez*, Case No. 20-CR-20155-RUIZ, (S.D. Fla. Jan. 18, 2024), ECF No. [351] at 6 ("In sum, the plain language and context of § 4C1.1(a)(10) is properly read to exclude any defendant who either had an aggravating role enhancement or engaged in a continuing criminal enterprise. Indeed, courts in this district have uniformly interpreted the guideline provision in this fashion, thereby disqualifying both sets of defendants."); *United States v. Leduan Abrahan Moreno Garcia*, Case No. 22-CR-20027-ALTONAGA, (S.D. Fla. Jan. 5, 2024), ECF No. [135] ("Defendant is not eligible for a sentence reduction under Amendment 821, the 'zero point offenders amendment,' because at the time of his original sentencing hearing, Defendant received an aggravating role enhancement."); *United States v. Frederik Barbieri*, Case No. 18-CR-20060-SCOLA, (S.D. Fla. Dec. 7, 2023), ECF No. [123] ("In addition, [the defendant] received sentencing enhancements as a leader and organizer of his trafficking organization, making him also ineligible for the two-level decrease under requirement number ten.").

Consistent with the overwhelming authority on this issue, including the Sentencing Commission's recent clarification in Amendment 831, the undersigned concludes that a defendant is ineligible for a reduction under U.S.S.G. § 4C1.1 if he or she received an aggravating role enhancement *or* was engaged in a continuing criminal enterprise. In this case, Bou stipulated in her plea agreement that she would recommend a two-level enhancement under U.S.S.G. § 3B1.1, *see* ECF No. [85] at ¶8(c), and she was indeed assessed with that aggravating role enhancement at sentencing, *see* ECF No. [127] at ¶69. As a result, she does not satisfy the criteria under U.S.S.G. § 4C1.1 for a two-level reduction and her advisory guideline range remains unchanged. As the Sentencing Commission has not lowered Bou's guideline range, she is ineligible for a reduction under 18 U.S.C. § 3582(c)(2).[3] For these reasons, the undersigned respectfully recommends that Bou's request for a sentence reduction under Amendment 821 and 18 U.S.C. § 3582(c)(2) be denied.

  b. **Compassionate Release**

   i. **Exhaustion of Administrative Remedies**

Here, there is no dispute that Bou has exhausted her administrative remedies. Attached to her Motion is Bou's Inmate Request to Staff to the warden at Aliceville FCI, dated June 1, 2024. *See* ECF No. [211] at 26. There is no indication that the warden responded to the request within the 30-day period, and the record reflects that Bou waited more than 30 days to file the Motion. *See generally* ECF No. [211]. Further, in its Response, the Government does not raise any arguments suggesting that Bou failed to exhaust. Bou has, therefore, satisfied this requirement.

---

[3] As Bou does not satisfy the first step of the inquiry (eligibility for a reduction), the undersigned has not analyzed the second step, that is, whether the District Court should exercise its discretion to lower her sentence under the 18 U.S.C. § 3553(a) factors.

### ii. Extraordinary and Compelling Circumstances

Although Bou satisfied the first requirement of a motion for compassionate release — exhaustion, she has not presented any extraordinary and compelling circumstances that would warrant her release. In support of her Motion, Bou argues that extraordinary and compelling conditions exist for four reasons: (1) she has suffered from clinical depression and anxiety while incarcerated as a result of her separation anxiety from her baby and due to concern over her adult child; (2) she is the primary caregiver of her adult son and young daughter, (3) her deportable status has deprived her of the ability to qualify for certain programs within BOP custody, and (4) she is subject to harsh conditions of confinement due to frequent lockdowns at Aliceville FCI. I have liberally construed Bou's *pro se* Motion, as I must,[4] and have considered all potential subsections of U.S.S.G. § 1B1.13 that discuss a medical condition in the context of an extraordinary and compelling reason, the caregiver provision, and the "[o]ther [r]easons" provision, as discussed below.

Starting with her health conditions, which consist of clinical depression and anxiety during incarceration due to her concern over the care of her adult son, who suffers from cerebral palsy and blindness, and separation anxiety from her baby, these do not satisfy the criteria of U.S.S.G. § 1B1.13 and do not rise to the level of an extraordinary and compelling reason. Importantly, Bou has not provided the Court with a single medical record to support her claim that she has been diagnosed with either of these medical conditions since her incarceration. But even if Bou had provided records confirming these diagnoses, she states that she is receiving medications to manage her clinical depression and anxiety. Courts routinely find that medical conditions that are being appropriately managed while in the custody of BOP do not rise to the

---

[4] "A document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

13

level of extraordinary and compelling circumstances. *See United States v. Lemy*, No. 20-CR-80062, 2023 WL 246895, at *3 (S.D. Fla. Jan. 18, 2023) (finding that a well-managed medical condition did not "constitute grounds for compassionate release due to the COVID-19 pandemic."); *United States v. Casado*, No. 99-CR-00125, 2022 WL 609611, at *4 (S.D. Fla. Feb. 10, 2022), *aff'd,* No. 22-10605, 2022 WL 7235956 (11th Cir. Oct. 13, 2022) (denying compassionate release when medical records indicated that the defendant's medical conditions were adequately managed in custody and his ailments did not substantially diminish his ability to provide self-care within the correctional facility).

But, more importantly, the conditions of which Bou complains, even if demonstrable, are not the type of medical conditions that U.S.S.G. § 1B1.13 contemplates as extraordinary and compelling. Indeed, depression and anxiety are not a "terminal illness," *see* U.S.S.G. § 1B1.13(b)(1)(A), and there is no evidence that, as a result of these conditions, Bou is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care" within Aliceville FCI and "from which . . . she is not expected to recover," *see* U.S.S.G. § 1B1.13(b)(1)(B). Similarly, Bou's claims of depression and anxiety do not demonstrate that she "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which [she] is at risk of serious deterioration in health or death." *See* U.S.S.G. § 1B1.13(b)(1)(C). And, finally, Bou's medical ailments do not qualify her for relief under U.S.S.G. § 1B1.13(b)(2) as this provision requires that she be "at least 65 years old" and that she "experience[d] a serious deterioration in physical or mental health because of the aging process," among other requirements. Bou, who is currently 42 years old, is plainly

14

ineligible for relief under this provision and there is no evidence that she is experiencing a serious deterioration in physical or mental health *because of* the aging process. Thus, Bou's health issues consisting of depression and anxiety, even if proven true, do not qualify for relief.

As a second basis for compassionate release, Bou argues that she is the primary caregiver of her adult son, who suffers from cerebral palsy, and her young daughter. To satisfy the criteria under U.S.S.G. § 1B1.13(b)(3), which discusses the "Family Circumstances of the Defendant," Bou must prove: "(A) [t]he death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition"; (B) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner"; (C) "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent"; or (D) "that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual." U.S.S.G. § 1B1.13(b)(3)(A)-(D) (emphasis omitted). Based on Bou's arguments, her only available avenue for relief as a caregiver requires proof that the current caregiver of her minor daughter and her adult disabled son has died or has become incapacitated. *See* U.S.S.G. § 1B1.13(b)(3)(A). Bou provides evidence of neither.

As to her minor child, she recognizes that the father "is attempting to support their child but his ability to serve as the primary caregiver is severely limited due to his long work hours." *See* ECF No. [211] at 10. Thus, Bou's own Motion makes clear that her minor daughter's caregiver, the father, has neither died nor become incapacitated during her incarceration.

15

Regarding her adult disabled son, she argues that his father left soon after he was diagnosed with cerebral palsy and blindness, so she needs to be released to provide him necessary care. However, Bou's PSI reflects that, prior to her incarceration, her adult son "[wa]s in the care of the State of Florida and [he] reside[d] in a medical facility." *See* ECF No. [127] at ¶89. In her Motion, Bou does not suggest that her son is no longer in the medical facility or in the care of the State of Florida. Thus, she provides no evidence of the death or incapacitation of his caregiver either. And, the undersigned notes that the District Court was aware of the needs for both Bou's adult disabled son and Bou's minor daughter and accounted for that at the time of sentencing, as both children were discussed in her PSI. *Id.* at ¶¶89, 91. Based on the foregoing, the undersigned concludes that Bou does not satisfy the criteria of U.S.S.G. § 1B1.13(b)(3).

Next, Bou raises concerns about lockdowns at Aliceville FCI as a reason to grant her compassionate release under U.S.S.G. § 1B1.13(b)(5), which states: "Other Reasons — The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." First, the undersigned notes that Bou presents no evidence to support her claim of frequent lockdowns at Aliceville FCI. Although she cites to an article posted on an internet website discussing understaffing generally within BOP, the article makes no mention of lockdowns or Aliceville FCI. *See* https://federalnewsnetwork.com/federal-report/2024/02/bop-staffing-problems-roll-on-and-on/ (last visited Jan. 30, 2025). Thus, Bou has not provided any information to substantiate her allegations of lockdowns, let alone the frequency of such lockdowns, or the conditions of

16

such lockdowns. This unsupported allegation, standing alone, is plainly insufficient to support a basis for compassionate release under "Other Reasons".[5]

Finally, Bou argues that her status as a deportable alien with a detainer qualifies as an "Other Reason[]" because that immigration status has deprived her of the ability to obtain any time credits under the First Step Act and made her ineligible for the Residential Drug Abuse Program and placement in a halfway house. When deciding what constitutes "Other Reasons" under U.S.S.G. § 1B1.13(b)(5), the proffered reason — in this case an immigration detainer and deportable status — must be "similar in gravity to those [conditions] described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The undersigned finds that a defendant's deportation status and detainer and any consequent loss of time credits or halfway house eligibility are not remotely similar in gravity to: a terminal illness; to a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, that substantially diminishes one's ability to provide self-care within the prison; to a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death; to a serious deterioration in physical or mental health because of the aging process for an inmate age 65 and older; to a victim of sexual assault within a prison; or to the death or incapacitation of a caregiver. These latter conditions are "extraordinary and compelling reasons" for compassionate release. But, an immigration detainer is not uncommon at all. And a common circumstance is not an "extraordinary" or "compelling" reason to justify compassionate release. As a result, Bou has failed to show that her immigration status satisfies the criteria of U.S.S.G. § 1B1.13(b)(5).

---

[5] As Bou has failed to set forth any evidence to support this allegation, this Report and Recommendation does not address whether lockdowns at a correctional institution standing alone would constitute an "Other Reason[]."

17

And, even if all the proffered reasons were considered in combination — her depression and anxiety, her desire to be the primary caregiver of her adult child and minor child, the lockdowns at Aliceville FCI, and her immigration status — these still do not satisfy the "Other Reasons" criteria. Not only has Bou failed to prove her medical conditions, show that her children lack an adequate caregiver, proven the existence of the lockdowns at Aliceville FCI, but all these conditions in combination are still not similar in gravity to the circumstances described in subsections (1) through (4) of U.S.S.G. § 1B1.13(b).

In short, none of the reasons that Bou raises constitute extraordinary and compelling circumstances under the applicable policy statement in U.S.S.G. § 1B1.13. Absent such reasons, compassionate release is not available to her. As Bou does not present any extraordinary and compelling circumstances to support her request for compassionate release, the Court need not move onto determine whether the 18 U.S.C. § 3553(a) factors weigh in favor of her release or whether she presents a danger to the community.

For these reasons, the undersigned recommends that Bou's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) be denied.

   c. **Motion for Appointment of Counsel**

Finally, Bou requests the appointment of counsel to assist her in "her sentence reconsideration, ensuring that her legal representations are thoroughly and effectively presented." *See* ECF No. [211] at 23. Given that there is nothing particularly complex about the relief sought in the Motion and that Bou is clearly not entitled to any relief, the undersigned recommends that her request for appointment of counsel also be denied. *See United States v. Aguilar*, No. 17-80177-CR, 2024 WL 3939006, at *7 (S.D. Fla. Aug. 6, 2024), *report and recommendation adopted sub nom. United States v. Aguilar*, No. 17-80177-CR, 2024 WL

3936064 (S.D. Fla. Aug. 26, 2024) (denying request for appointment of counsel when argument for sentence reduction was futile); *United States v. Reyes*, No. 21-20359-CR, 2024 WL 3043475, at *2 (S.D. Fla. June 18, 2024) ("The Court also denies the Defendant's request for appointment of counsel because there is nothing complex about this case that would require appointed counsel, and he is clearly not entitled to relief.").

## IV.   CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that Defendant Maria G. Bou's Motion for Compassionate Release, Motion for Sentence Reconsideration, and Motion for Appointment of Counsel, **ECF No. [211]**, be **DENIED**.

The parties will have **fourteen (14) days** from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Beth Bloom, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on February 3, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

CASE NO. 22-CR-20262-BLOOM/Elfenbein

cc: All counsel of record

Maria G Bou
Inmate No. 06572-510
Aliceville Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 4000
Aliceville, AL 35442

20